**EMERALD PARTNERS, a New Jersey limited partnership, Plaintiff Below, Appellant,**

v.

**Ronald P. BERLIN, David L. Florence, Rex A. Sebastian, and Theodore H. Strauss, Defendants Below, Appellees.**

No. 96, 2001.

Supreme Court of Delaware.

Submitted: Oct. 5, 2001.
Decided: Nov. 28, 2001.

Gregory V. Varallo, Esquire (argued), Daniel A. Dreisbach, Esquire, C. Malcolm Cochran, IV, Esquire, Lisa A. Schmidt, Esquire, Dominick Gattuso, Esquire, and Richard P. Rollo, Esquire, of Richards, Layton & Finger, Wilmington, Delaware for appellant.

Lewis H. Lazarus, Esquire (argued), P. Clarkson Collins, Jr., Esquire, and Michael A. Weidinger, Esquire, of Morris, James, Hitchens & Williams, Wilmington, Delaware for appellees.

Before WALSH, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

This matter is before us for the third time. The present appeal is from a post-trial final judgment entered by the Court of Chancery. In the second appeal to this Court, we affirmed, in part, but reversed the entry of summary judgment in favor of the director defendants and remanded the case to the Court of Chancery for a trial.[1]

In this appeal, the appellants contend that the Court of Chancery failed to follow the mandate of this Court upon remand and erred, as a matter of law, by not conducting an entire fairness analysis in its posttrial opinion. The director defendants contend that the Court of Chancery properly declined to address any issue in its posttrial decision except for the exculpatory provision in the corporate charter that was enacted pursuant to 8 *Del. C.* § 102(b)(7). We have concluded that the Court of Chancery was required to decide the issue of entire fairness at trial and that, once again, its consideration of the Section 102(b)(7) charter provision was premature. Accordingly, the judgment of the Court of Chancery must be vacated and this matter remanded.

---

1. *Emerald Partners v. Berlin,* Del.Supr., 726 A.2d 1215, 1227 (1999). "The Court of Chancery's grant of summary judgment in favor of Hall Financial [was] affirmed. The [judgment] of the Court of Chancery with respect to Emerald Partners' *Revlon* claim [was] also affirmed. The judgment of the Court of Chancery finding that defendants were 'wrongfully' enjoined and [entitled] to $99,200 in damages [was] affirmed." *Id.*

## Facts [2]

The appellant, Emerald Partners, a New Jersey limited partnership, filed this action on March 1, 1988, to enjoin the consummation of a merger between May Petroleum, Inc. ("May"), a Delaware corporation and thirteen corporations owned by Craig Hall ("Hall"), the Chairman and Chief Executive Officer of May. Also joined as defendants were May's directors, Ronald P. Berlin, David L. Florence, Rex A. Sebastian, and Theodore H. Strauss (collectively the "director defendants"). Added later as a defendant was Hall Financial, the successor in interest to Hall Financial Group, Inc., the corporate defendant produced by the merger of May and the Hall corporations.

In October 1987, Hall, at that time a holder of 52.4% of May's common stock, proposed a merger of May and thirteen sub-chapter S corporations owned by Hall that were primarily engaged in the real estate service business. The board of directors of May consisted of Hall and Berlin, the inside directors, and Florence, Sebastian and Strauss, the outside directors.

The outside directors authorized the engagement of Bear Stearns & Company ("Bear Stearns") to act as investment advisor and render a fairness opinion to the board and the May stockholders. On the basis of company valuations and the Bear Stearns fairness letter, the transaction, as eventually crafted, contemplated that Hall would receive twenty-seven million May common shares in exchange for the merger of the Hall corporations with May, increasing Hall's shareholding to 73.5% of May's outstanding common stock as reflected in the post-merger entity.

May and the Hall corporations entered into a proposed merger agreement on November 30, 1987. On February 1, 1988, effective January 29, 1988, Hall reduced his beneficial interest in May to 25% of the outstanding common stock by transferring shares to independent irrevocable trusts created for the benefit of his children. This transfer took place before the record date and prior to the stockholder vote on the merger. The merger agreement was reaffirmed by the board on February 13, 1988 with the only change reflecting the reduction in Hall's ownership. On February 16, 1988, May issued a proxy statement to shareholders that described May, the Hall corporations and the proposed merger terms. The May shareholders approved the merger on March 11, 1988, despite the pendency of Emerald Partners' request for injunctive relief.

Following expedited discovery, the Court of Chancery, on March 18, 1988, issued a preliminary injunction enjoining the merger on the grounds that Article Fourteenth of May's certificate of incorporation required a supermajority vote and that at the special meeting of the stockholders either no quorum was present, or the merger did not receive the required vote.[3] Emerald Partners posted an injunction bond in the amount of $500,000, and the defendants filed an expedited interlocutory appeal.

This Court, *en banc*, orally reversed the grant of the injunction on August 15, 1988, and later issued a written opinion holding that the supermajority provision was inapplicable and that the quorum requirement and the voting power provisions of the

---

**2.** This is the same recitation of facts, in part, that appears in our prior opinion. *Emerald Partners v. Berlin*, Del.Supr., 726 A.2d 1215, 1218–19 (1999). We have repeated the facts for the convenience of the parties.

**3.** *Emerald Partners v. Berlin*, Del. Ch., C.A. No. 9700, 1988 WL 25269 (Mar. 18, 1988), *rev'd*, Del.Supr., C.A. No. 9700, 1988 WL 93447 (Aug. 15, 1988) (ORDER).

certificate of incorporation were correctly applied and satisfied.[4] Thereafter, the merger was completed on August 15, 1988.

When the first appeal involving these parties was decided in 1988, and this Court orally reversed the decision of the Court of Chancery to enjoin the merger, that ruling was effectuated with a written order.[5] Although the majority opinion that followed did not specifically address the issue of entire fairness, the order effectuating our oral ruling stated that "the parties to the merger may proceed at their own risk."[6] The obvious risk referred to in that order, as the dissenting opinion later made clear, was that the proponents of the merger might later have to prove its entire fairness.[7]

In fact, following the consummation of the merger, Emerald Partners continued its class and derivative actions. Those efforts are reflected in numerous subsequent rulings by the Court of Chancery.[8] Several of those decisions by the Court of Chancery resulted in a second appeal to this Court.[9]

In the second appeal to this Court, we reviewed the Court of Chancery's grant of summary judgment in favor of the defendant corporation and its directors.[10] We concluded that "the entire fairness claim was fairly pleaded and [was] intertwined

with disclosure violation claims."[11] We affirmed the judgment in favor of the corporation but reversed the grant of summary judgment in favor of the director defendants.[12] We remanded the matter to the Court of Chancery for a trial pursuant to the entire fairness standard of review.[13]

### Shareholder Litigation Review Standards

When shareholders challenge actions by a board of directors, generally one of three standards of judicial review is applied: the traditional business judgment rule, an intermediate standard of enhanced judicial scrutiny, or the entire fairness analysis.[14] The applicable standard of judicial review often controls the outcome of the litigation on the merits.[15] Similarly, the appropriate standard of judicial review determines the proper procedural posture for giving substantive effect to a charter provision that has been enacted pursuant to Section 102(b)(7).

### Issue Presented

In this appeal, we must decide when it is appropriate procedurally to consider the substantive effect of a Section 102(b)(7) provision, in a shareholder challenge to a transaction that requires a trial pursuant to the entire fairness standard of judicial

4. *Berlin v. Emerald Partners,* Del.Supr., 552 A.2d 482 (1988).

5. *Id.*

6. *Berlin v. Emerald Partners,* Del.Supr., C.A. No. 9700, 1988 WL 93447 (Aug. 15, 1988) (ORDER).

7. *Berlin v. Emerald Partners,* 552 A.2d at 496.

8. *Emerald Partners v. Berlin,* 726 A.2d at 1219.

9. *Id.* at 1215.

10. *Id.* at 1227.

11. *Id.* at 1218.

12. *Id.* at 1227.

13. *Id.* at 1223.

14. *Unitrin, Inc. v. Am. Gen. Corp.,* Del.Supr., 651 A.2d 1361, 1371 (1995).

15. *Id.* (citing *Mills Acquisition Co. v. Macmillan, Inc.,* Del.Supr., 559 A.2d 1261, 1279 (1989) (quoting *AC Acquisitions Corp. v. Anderson, Clayton & Co.,* Del.Ch., 519 A.2d 103, 111 (1986))).

review. In *Malpiede v. Townson*,[16] we recently answered that question in a pretrial procedural context, when the applicable standard of judicial review was the business judgment rule.[17] We begin, as in *Malpiede,* with a brief examination of the origins and operation of Section 102(b)(7).[18]

### Section 102(b)(7)

The directors of Delaware corporations have a triad of primary fiduciary duties: due care, loyalty, and good faith.[19] Those fiduciary responsibilities do not operate intermittently.[20] Accordingly, the shareholders of a Delaware corporation are entitled to rely upon their board of directors to discharge each of their three primary fiduciary duties at all times.[21]

In 1986, Section 102(b)(7) was enacted by the Delaware General Assembly,[22] following a "directors and officers insurance liability crisis and the 1985 . . . decision [of this Court] in *Smith v. Van Gorkom.*"[23] In *Van Gorkom,* we held that directors were personally liable in monetary damages for gross negligence in the process of decisionmaking.[24] The purpose of Section 102(b)(7) was to *permit shareholders*—who

are entitled to rely upon directors to discharge their fiduciary duties at all times— to adopt a provision in the certificate of incorporation to exculpate directors from any personal liability for the payment of monetary damages for breaches of their duty of care, but not for duty of loyalty violations, good faith violations and certain other conduct.[25] Following the enactment of Section 102(b)(7), the shareholders of many Delaware corporations approved charter amendments containing these exculpatory provisions [26] with full knowledge of their import.[27]

### Business Judgment Rule and Section 102(b)(7)

The business judgment rule is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company [and its shareholders]."[28] The business judgment rule operates as a procedural guide for litigants and as a substantive rule of law.[29] "As a procedural guide, the

---

16. *Malpiede v. Townson,* Del.Supr., 780 A.2d 1075 (2001).

17. *Id.* at 1089.

18. *Id.* at 1095.

19. *Malone v. Brincat,* Del.Supr., 722 A.2d 5, 10 (1998).

20. *Id.*

21. *Id.*

22. 65 *Del. Laws,* c. 289 (1986).

23. *Malpiede v. Townson,* 780 A.2d 1075, 1095 (2001) (citing *Smith v. Van Gorkom,* Del. Supr., 488 A.2d 858 (1985)).

24. *Smith v. Van Gorkom,* 488 A.2d at 873.

25. *Malpiede v. Townson,* 780 A.2d at 1095. Such a charter provision does not affect in-

junctive proceedings based on gross negligence. *Id.; see also* E. Norman Veasey et al., *Delaware Supports Directors with a Three-Legged Stool of Limited Liability, Indemnification and Insurance,* 42 BUS. LAW. 399, 401–04 (1987).

26. *Malpiede v. Townson,* 780 A.2d at 1095; see E. Norman Veasey, *An Economic Rationale for Judicial Decisionmaking in Corporate Law,* 53 BUS. LAW. 681, 693–94 (1998).

27. *Zirn v. VLI Corp.,* Del.Supr., 681 A.2d 1050, 1062 (1996).

28. *Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 812 (1984).

29. *Cinerama, Inc. v. Technicolor, Inc.,* Del. Supr., 663 A.2d 1156, 1162 (1995) (citing *Cede & Co. v. Technicolor, Inc.,* Del.Supr., 634 A.2d 345, 360 (1993)); *see Unitrin, Inc. v. Am.*

business judgment presumption is a rule of evidence that places the initial burden of proof on the plaintiff." [30]

To rebut the presumptive applicability of the business judgment rule, a shareholder plaintiff has the burden of proving that the board of directors, in reaching its challenged decision, violated any one of its triad of fiduciary duties: due care, loyalty, or good faith.[31] If a shareholder plaintiff fails to meet this evidentiary burden, the business judgment rule operates to provide substantive protection for the directors and for the decisions that they have made.[32] If the presumption of the business judgment rule is rebutted, however, the burden shifts to the director defendants to prove to the *trier of fact* that the challenged transaction was "entirely fair" to the shareholder plaintiff.[33]

The statutory enactment of Section 102(b)(7) was a logical corollary to the common law principles of the business judgment rule. Since its enactment, Delaware courts have consistently held that the adoption of a charter provision, in accordance with Section 102(b)(7), bars the recovery of monetary damages from directors for a successful shareholder claim that is based exclusively upon establishing a violation of the duty of care.[34] Accordingly, in *Malpiede*, this Court held that if a shareholder complaint unambiguously asserts *only* a due care claim, the complaint is dismissible once the corporation's Section 102(b)(7) provision is properly invoked.[35]

In *Malpiede*, we stated that the exculpation afforded by a Section 102(b)(7) charter provision must be *affirmatively* raised by the director defendants.[36] Recognizing that it is appropriate for the Court of Chancery to consider a properly raised Section 102(b)(7) charter provision in a pretrial context illustrates why this Court characterized such provisions in *Emerald Partners v. Berlin*[37] as in the "*nature* of an affirmative defense."[38] An affirmative defense is "[a] defendant's assertion rais-

---

*Gen. Corp.,* Del.Supr., 651 A.2d 1361, 1374 (1995).

**30.** *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d at 1162.

**31.** *Id.* at 1164 (citing *Cede & Co. v. Technicolor, Inc.,* 634 A.2d at 361).

**32.** *Id.* at 1162.

**33.** *Id.* at 1162 (citing *Cede & Co. v. Technicolor, Inc.,* 634 A.2d at 361); *Nixon v. Blackwell,* Del.Supr., 626 A.2d 1366, 1376 (1993); *Mills Acquisition Co. v. Macmillan, Inc.,* Del.Supr., 559 A.2d 1261, 1279 (1989); *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701, 703 (1983).

**34.** *Malpiede v. Townson,* Del.Supr., 780 A.2d 1075, 1095 (2001); *see, e.g., Emerald Partners v. Berlin,* Del.Supr., 726 A.2d 1215, 1224 (1999); *Zirn v. VLI Corp.,* Del.Supr., 681 A.2d 1050, 1061–62 (1996); *Arnold v. Soc'y for Sav. Bancorp., Inc.,* Del.Supr., 650 A.2d 1270, 1288 (1994).

**35.** *Malpiede v. Townson,* 780 A.2d at 1093. In *Malpiede,* as guidance for future cases, we described several methods that are available to the director defendants to raise and argue the applicability of the bar of a Section 102(b)(7) charter provision to a due care claim. *Id.* at 1092. "The Section 102(b)(7) bar may be raised on a Rule 12(b)(6) motion to dismiss (with or without the filing of an answer), a motion for judgment on the pleadings (after filing an answer), or a motion for summary judgment (or partial summary judgment) under Rule 56 after an answer, with or without supporting affidavits." *Id.*

**36.** *Id.* at 1095 & n. 70 (citing *Emerald Partners v. Berlin,* 726 A.2d at 1223).

**37.** *Emerald Partners v. Berlin,* 726 A.2d at 1215.

**38.** *Id.* at 1223.

ing new facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all allegations in the complaint are true." [39]

■ Although a Section 102(b)(7) provision does not operate to defeat the validity of a plaintiff's claim on the merits, it can operate to defeat the plaintiff's ability to recover monetary damages. Accordingly, if the shareholder complaint only alleges a duty of care violation, the entry of a monetary judgment following a finding of unfairness would be uncollectible. Consequently, a trial pursuant to the entire fairness standard of review would serve no useful purpose. Thus, under those specific circumstances, when the presumption of the business judgment rule has been rebutted in the shareholder complaint solely by successfully alleging a duty of care violation, the director defendants do not have to prove entire fairness to the trier of fact, because of the exculpation afforded to the directors by the Section 102(b)(7) provision inserted by the shareholders into the corporation's charter.

The rationale of *Malpiede* constitutes judicial cognizance of a practical reality: unless there is a violation of the duty of loyalty or the duty of good faith, a trial on the issue of entire fairness is unnecessary because a Section 102(b)(7) provision will exculpate director defendants from paying monetary damages that are exclusively attributable to a violation of the duty of care. The effect of our holding in *Malpiede* is that, in actions against the directors of Delaware corporations with a Section 102(b)(7) charter provision, a shareholder's complaint must allege well-pled facts that, if true, implicate breaches of loyalty or good faith.[40] Otherwise, in those cases that begin with the presumption of the business judgment rule, *ab initio*, our holding in *Malpiede* establishes that the proper invocation of a Section 102(b)(7) provision can obviate a trial pursuant to the entire fairness standard, even if the presumption of the business judgment rule is successfully rebutted by a duty of care violation, since liability for duty of loyalty violations or violations of good faith are not at issue.[41]

### Entire Fairness and Section 102(b)(7)

In *Malpiede*, we noted that the procedural posture was "quite different" from the circumstances that were before this Court in the second appeal involving Emerald Partners.[42] In *Malpiede*, the applicable pretrial standard for judicial review of the directors' actions *ab initio* was the business judgment rule. In *Emerald Partners*, however, we held that the complaint "made a sufficient showing through factual allegations that entire fairness

---

**39.** BLACK'S LAW DICTIONARY 430 (7th ed.1999).

**40.** *Malpiede v. Townson*, 780 A.2d at 1094. In *Malpiede*, for example, we noted that the shareholder complaint in *McMullin* alleged facts, if true, that described a duty of care violation that could be attributed to the board of directors' divided loyalties. *Id.* at 1094 & n. 64 (citing *McMullin v. Beran*, Del.Supr., 765 A.2d 910, 926 (2000)). Conversely, in *Malpiede* itself, all of the well-pled allegations in the shareholder's complaint, if true, would only constitute duty of care violations. *Id.* at 1094.

**41.** *See Malpiede v. Townson*, 780 A.2d at 1094–95. As we noted in *Malpiede*, "plaintiffs must plead facts supporting a claim that is not barred by the exculpatory charter provision—for example, a claim for a breach of the board's duty of good faith or loyalty. If the plaintiff were to establish by proof at trial a *prima facie* case of a loyalty violation, defendants would then have the burden to establish entire fairness." *Id.* at 1094 n. 64 (citing *Cede & Co. v. Technicolor, Inc.*, 634 A.2d at 361).

**42.** *Malpiede v. Townson*, Del.Supr., 780 A.2d 1075, 1094 (2001).

should be the standard by which the directors' actions are reviewed" at trial.[43]

In *Malpiede*, we held that when the standard of review *ab initio* is the business judgment rule, properly raising the existence of a valid exculpatory Section 102(b)(7) provision in the corporate charter "entitles director [defendants] to dismissal of any claims for [monetary] damages against them that are based *solely* on alleged breaches of the board's duty of care."[44] The rationale of our holding in *Malpiede* explains why an entire fairness analysis can never be avoided in any challenged transaction that requires an application of the entire fairness standard of judicial review *ab initio* at trial—as we held in our last *Emerald Partners* opinion—notwithstanding the existence of a Section 102(b)(7) provision. The category of transactions that require judicial review pursuant to the entire fairness standard *ab initio* do so because, by definition, the inherently interested nature of those transactions are inextricably intertwined with issues of loyalty.[45]

In *Cinerama, Inc. v. Technicolor, Inc.*,[46] this Court held that evidence of how the board of directors discharged all three of its primary fiduciary duties has "probative substantive significance throughout an entire fairness analysis and, by necessity, must permeate that analysis, for two reasons."[47] First, a substantive finding of entire fairness is only possible after examining and balancing the nature of the duty or duties that the board breached in a contextual comparison to how the board otherwise properly discharged its fiduciary responsibilities.[48] Second, the determination that a board has failed to satisfy the entire fairness standard will constitute the basis for a finding of substantive liability.[49]

■■ A determination that a transaction must be subjected to an entire fairness analysis is not an implication of liability.[50] Therefore, when entire fairness is the applicable standard of judicial review, this Court has held that injury or damages becomes a proper focus only *after* a transaction is determined *not* to be entirely fair.[51] *A fortiori*, the exculpatory effect of a Section 102(b)(7) provision only becomes a proper focus of judicial scrutiny after the directors' potential personal liability for the payment of monetary damages has been established. Accordingly, although a Section 102(b)(7) charter provision may provide exculpation for directors against the payment of monetary damages that is attributed exclusively to violating the duty of care, even in a transaction that requires the entire fairness review standard *ab initio*, it cannot eliminate an entire fairness analysis by the Court of Chancery.[52]

---

43. *Emerald Partners v. Berlin*, Del.Supr., 726 A.2d 1215, 1222 (1999).

44. *Malpiede v. Townson*, 780 A.2d at 1095–96 & n. 70.

45. *See Kahn v. Lynch Communication Sys., Inc.*, Del.Supr., 638 A.2d 1110, 1117 (1994); accord *Weinberger v. UOP, Inc.*, Del.Supr., 457 A.2d 701, 710–11 (1983); *Sterling v. Mayflower Hotel Corp.*, Del.Supr., 93 A.2d 107, 110 (1952).

46. *Cinerama, Inc. v. Technicolor, Inc.*, Del. Supr., 663 A.2d 1156 (1995).

47. *Id.* at 1164–65.

48. *Id.* at 1165.

49. *Id.*

50. *Nixon v. Blackwell*, Del.Supr., 626 A.2d 1366, 1376 (1993).

51. *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d at 1166 (citing *Cede & Co. v. Technicolor, Inc.*, Del.Supr., 634 A.2d 345, 371 (1993)).

52. *See Kahn v. Lynch Communication Sys., Inc.*,, 638 A.2d at 1116. In *Kahn*, we explained that when a transaction requires an analysis for entire fairness *ab initio*, although the burden of proving entire fairness could be

■ If the board's actions do not withstand the judicial scrutiny of an entire fairness analysis, the breach or breaches of fiduciary duty upon which substantive liability for monetary damages is based become outcome determinative when the directors seek exculpation through a charter provision enacted in accordance with Section 102(b)(7).[53] Such a provision bars any claim for monetary damages against director defendants based solely on the board's alleged breach of its duty of care but does not provide protection against violations of the fiduciary duties of either loyalty or good faith.[54] Consequently, we have held that "[t]he Court of Chancery must identify the breach or breaches of fiduciary duty upon which liability [for damages] will be predicated in the *ratio decidendi* of its determination that entire fairness has not been established."[55] Accordingly, we hold that when entire fairness is the applicable standard of judicial review, a determination that the director defendants are exculpated from paying monetary damages can be made only *after the basis* for their liability has been decided.

### Law of the Case

In the last appeal, we noted that, as a matter of substantive law, the circumstances attendant upon the events leading to the negotiation of the merger appear to implicate the entire fairness standard. Hall, as Chairman and Chief Executive Officer of both May and the Hall corporations and sole owner of the Hall corporations, "clearly stood on both sides of the transaction."[56] Additionally, "at the time the parties entered the proposed merger agreement in November of 1987, Hall owned 52.4% of May common stock."[57]

We expanded our observations in a footnote.[58] We noted that "at the time of the merger, Hall had reduced his ownership interest to 25% of the outstanding common stock."[59] We then recognized that "a shareholder who owns less than 50% of a corporation's outstanding stock, without some additional allegation of domination through actual control of corporat[e] conduct, is not a 'controlling stockholder' for fiduciary duty purposes . . . ."[60] We specifically stated, however, that "Hall's stance on both sides as a corporate fiduciary, *alone*, is sufficient to *require* the demonstration of entire fairness."[61]

shifted, the standard of judicial review remained entire fairness. *Id.*

**53.** *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d at 1165 & n. 16.

**54.** *Malpiede v. Townson,* 780 A.2d at 1095.

**55.** *Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d at 1165.

**56.** *Emerald Partners v. Berlin,* Del.Supr., 726 A.2d 1215, 1221 (1999).

**57.** *Id.*

**58.** *Id.* at 1221 n. 8.

**59.** *Id.*

**60.** *Id.; see Cinerama, Inc. v. Technicolor, Inc.,* Del.Supr., 663 A.2d 1156, 1169–70 (1995); *Kahn v. Lynch Communication Sys., Inc.,* Del. Supr, 638 A.2d 1110, 1113–16 (1994) (describing the establishment of controlling shareholder status and concomitant fiduciary duties). In the second appeal to this Court, "we specifically decline[d] to address the effect, if any, on controlling shareholder status of Hall's divestment of a portion of his ownership interest after the execution of the merger agreement but before the approval of a revised merger agreement and the shareholder vote." *Emerald Partners v. Berlin,* 726 A.2d at 1221 n. 8.

**61.** *Emerald Partners v. Berlin,* 726 A.2d at 1221 n. 8 (emphasis added).

Consequently, we held that "Emerald Partners has made a sufficient showing through factual allegations that entire fairness should be the standard by which the directors' actions are reviewed. Such a showing shifts to the director defendants the burden to establish that the challenged transaction was entirely fair." [62] Our last opinion acknowledged, however, that on remand the director defendants "may be able to secure the burden shifting benefit by demonstrating either sufficient independent director approval or fully informed shareholder approval." [63]

■ Nevertheless, when the standard of review is entire fairness, even if the burden of proof is shifted, a judicial determination on the issue of entire fairness is a condition precedent to any consideration of damages. That is why in the last appeal we held that the Court of Chancery's grant of summary judgment in favor of the directors, on the basis of the Section 102(b)(7) provision, was *premature*.[64] We then noted for future guidance that the shield from liability provided by a Section 102(b)(7) provision was in the *nature* of an affirmative defense.[65] Thus, we concluded that if entire fairness was not established, the director defendants seeking exculpation under such a provision must bear the burden of establishing its elements.[66] The grant of summary judgment in favor of the director defendants was reversed and we remanded the matter for judicial scrutiny

pursuant to the entire fairness standard of review.[67]

### *Proceedings on Remand*

■ On remand, the Court of Chancery held a pretrial conference. The parties agreed that the director defendants had the burden of proving entire fairness, pursuant to this Court's holding and mandate in the second appeal. The Court of Chancery ruled that the director defendants would present their evidence first and the case proceeded to trial.

The opening posttrial brief filed by the director defendants properly argued the first issue to be decided was entire fairness. The director defendants' opening posttrial brief then submitted "in the unlikely event the Court [of Chancery] finds that the merger was not entirely fair and May's shareholders were damaged as a result, judgment still must be entered in defendants favor because of the Section 102(b)(7) provision in its charter." The shareholders' posttrial answering brief started by arguing that entire fairness had not been established. The shareholders then argued that the director defendants had also not sustained their burden of establishing exculpation by virtue of the Section 102(b)(7) charter provision.

Apparently, the Court of Chancery's decision not to conduct an entire fairness review in its posttrial opinion is attributable to the position asserted in director

---

62. *Id.* at 1222.

63. *Id.* at 1223. "This Court has identified two scenarios that can provide the basis for shifting the burden to the *plaintiff* to demonstrate that the transaction complained of was *not* entirely fair. First, an approval of the transaction by an independent committee of directors who have real bargaining power that can be exerted in dealings with a majority shareholder who does not dictate the terms of the merger may supply the necessary basis for shifting the burden.... Second, the ap-

proval of the transaction by a *fully informed* vote of a majority of the minority shareholders will shift the burden." *Id.* at 1222–23 (citations omitted).

64. *Id.* at 1223.

65. *Id.*

66. *Id.* at 1223–24.

67. *Id.* at 1222–23, 1227.

defendants' posttrial reply brief. In that reply brief, the director defendants argued that the Court of Chancery did not have to look at anything other than the Section 102(b)(7) charter provision. The Court of Chancery apparently accepted that argument because the posttrial opinion begins by stating: "it is unnecessary to address the plaintiff's claim that the merger fails the test of entire fairness."[68] The posttrial opinion then continued, in part, as follows:

> As discussed below, the Court finds that the plaintiff's money damages claims cannot succeed because the defendants have carried their burden of showing that their affirmative defenses bar those claims. For that reason, the plaintiff's claims are evaluated within the analytical framework of those affirmative defenses, rather than independently as standalone claims.[69]

■ The Court of Chancery should have rejected the erroneous legal argument in the director defendants' posttrial reply brief. It is not surprising that the director defendants wanted the Court of Chancery to start with their "bottom line" position: *i.e.*, the shareholder plaintiffs could not collect monetary damages from them even if the transaction was unfair. When the entire fairness standard of review is applicable, however, judicial analysis must begin with an examination of the *process* by which the directors discharged their fiduciary responsibilities, notwithstanding the existence of a Section 102(b)(7) charter provision. The director defendants incorrectly asserted that they may avoid posttrial judicial scrutiny pursu-

ant to the entire fairness standard of review, by asserting a Section 102(b)(7) provision as a defense to the payment of monetary damages, before a finding of unfairness had been made with a rationale for that determination. Such an assertion is not only unsupportable generally but contrary to the law of the case as defined by this Court.

### Entire Fairness Analysis Required

When the General Assembly enacted Section 102(b)(7), three years after this Court's landmark decision in *Weinberger v. UOP, Inc.*,[70] it not only recognized but reinforced *Weinberger's* restatement of a venerable and fundamental principle of our common law corporate fiduciary jurisprudence: "there is no 'safe harbor' for ... divided loyalties in Delaware."[71] The fact that Section 102(b)(7) does not permit shareholders to exculpate directors for violations of loyalty or good faith reflects that the provision was a thoughtfully crafted legislative response to our holding in *Van Gorkom* and, simultaneously, reflected the General Assembly's own expression of support for our assertion in *Weinberger* that when the standard of review is entire fairness "the requirement of fairness is unflinching in its demand...."[72]

■ In this case, since Hall was on both sides of this transaction, the director defendants might ultimately be able to rely upon the Section 102(b)(7) charter provision to seek exculpation from paying monetary damages, but they cannot assert that provision to avoid the unflinching demand

---

**68.** *Emerald Partners v. Berlin,* Del.Ch., C.A. No. 9700, 2001 WL 115340, at *18 (Feb. 7, 2001).

**69.** *Id.* at *19.

**70.** *Weinberger v. UOP, Inc.,* Del.Supr., 457 A.2d 701 (1983).

**71.** *Id.* at 710.

**72.** *Id.*

of demonstrating entire fairness.[73] Once entire fairness is the applicable standard—as we held it was in our last *Emerald Partners* opinion—the director defendants, at least initially, bear the burden of proof.[74] In our prior opinion, we acknowledged that the burden of proof on the issue of entire fairness might shift on remand.[75] The Court of Chancery did not make a determination that the burden had shifted, either before or during the course of the trial in this matter, and that is now the law of this case. Nevertheless, even if the burden of proof had shifted, entire fairness would remain the proper standard of judicial review because the unchanging nature of the underlying inherently "interested" transaction requires that careful scrutiny.[76]

The decision in *Weinberger* continues to be the seminal pronouncement by this Court regarding the entire fairness standard of judicial review. In *Weinberger*, the Court stated the dual aspects of entire fairness as follows:

> The concept of fairness has two basic aspects: fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. The latter aspect of fairness relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock. However, the test for fairness is not a bifurcated one as between fair dealing and price. All aspects of the issue must be examined as a whole since the question is one of entire fairness.[77]

To demonstrate entire fairness, the board must present evidence of the cumulative manner by which it discharged *all* of its fiduciary duties.[78] An entire fairness analysis then requires the Court of Chancery "to consider carefully how the board of directors discharged all of its fiduciary duties with regard to each aspect of the non-bifurcated components of entire fairness: fair dealing and fair price."[79]

### Second Remand Necessary

We have determined that this matter must be remanded for a second time because, once again, the Court of Chancery's consideration of the Section 102(b)(7) charter provision was premature. The same policy rationale that subjects a transaction to judicial review for entire fairness, even if the burden of persuasion shifts, requires a finding of unfairness and the basis of liability for monetary damages, before the exculpatory nature of a Section 102(b)(7) provision is examined.[80] When the case

**73.** *Id.*

**74.** *Emerald Partners v. Berlin*, Del.Supr., 726 A.2d 1215, 1222 (1999).

**75.** *Id.* at 1222–23.

**76.** *See Weinberger v. UOP, Inc.*, 457 A.2d at 710 (citing *Sterling v. Mayflower Hotel Corp.*, Del.Supr., 93 A.2d 107, 110 (1952)).

**77.** *Weinberger v. UOP, Inc.*, 457 A.2d at 711 (citations omitted).

**78.** *Cinerama, Inc. v. Technicolor, Inc.*, Del. Supr., 663 A.2d 1156, 1163 (1995).

**79.** *Id.* at 1172.

**80.** *Kahn v. Lynch Communication Sys., Inc.*, Del.Supr., 638 A.2d 1110, 1117 (1994). *Compare Arnold v. Soc'y for Sav. Bancorp, Inc.*, Del.Supr., 650 A.2d 1270, 1286 (1994) (holding that a Section 102(b)(7) provision shielded the individual directors from liability only after finding that there was a disclosure violation).

was remanded after the last appeal to this Court, the initial focus of the Court of Chancery's posttrial opinion should have been an entire fairness analysis. The Court of Chancery erred, as a matter of law, when it failed to engage in an entire fairness analysis and, instead, simply examined the plaintiffs' claims in the context of the Section 102(b)(7) charter provision.

Upon remand, the Court of Chancery must analyze the factual circumstances, apply a disciplined balancing test to its findings on the issue of fair dealing and fair price, and articulate the basis upon which it decides the ultimate question of entire fairness.[81] If the Court of Chancery determines that the transaction was entirely fair, the director defendants have no liability for monetary damages. The Court of Chancery should address the Section 102(b)(7) charter provision only if it makes a determination that the challenged transaction was not entirely fair. The director defendants' Section 102(b)(7) request for exculpation must then be examined in the context of the completed judicial analysis that resulted in a finding of unfairness. The director defendants can avoid personal liability for paying monetary damages only if they have established that their failure to withstand an entire fairness analysis is exclusively attributable to a violation of the duty of care.

### Conclusion

The judgment of the Court of Chancery is vacated. This matter is remanded to the Court of Chancery for an initial analysis pursuant to the entire fairness standard of judicial review. If that standard is not satisfied, the Court of Chancery must decide if the director defendants have established that they are exculpated from liability for monetary damages because of the Section 102(b)(7) charter provision.

### Motion for Clarification

The Court has before it a motion for clarification filed by the director defendant appellees. That motion asserts that the following language in our most recent opinion is ambiguous:

> In our [1999] opinion, we acknowledged that the burden of proof on the issue of entire fairness might shift on remand. The Court of Chancery did not make a determination that the burden had shifted, either before or during the course of the trial in this matter, *and that is now the law of this case.*

The foregoing language means that, when the Court of Chancery conducts its entire fairness analysis following *this* remand, it is foreclosed from shifting to the shareholder plaintiffs the burden of demonstrating that the transaction was not entirely fair. This holding is based upon the procedures that were followed after our prior remand in this case. We note, however, that there is a distinct difference between how the parties decided to proceed prior to trial in this case and the options that are generally available to parties in a similar procedural posture.

### This Case's Prior Procedural Posture

■ The record reflects that this case involves a transaction that was subject to the entire fairness standard of review *ab initio*. In our most recent opinion, we noted that an application of the entire fairness standard is not an implication of liability. Similarly, an application of the entire fairness standard *ab initio* does not mean that a trial is always inevitable. When the standard of review is entire fairness, *ab initio*, director defendants can move for summary judgment on either the issue of entire fairness or the issue of

---

**81.** *Cinerama, Inc. v. Technicolor, Inc.,* Del. Supr., 663 A.2d 1156, 1179 (1995) (citing *Nixon v. Blackwell,* Del.Supr., 626 A.2d 1366, 1373, 1378 (1993)).

burden shifting. As we explained in our 1999 opinion, however, a director defendants' motion for summary judgment based upon a Section 102(b)(7) exculpatory charter provision would be improper as premature.[82]

In this case, our 1999 opinion held that the shareholder plaintiffs were entitled to a trial on the merits regarding the issue of entire fairness. Therefore, when this case was remanded for a trial on the issue of entire fairness, it was obviously beyond the procedural posture of either a motion to dismiss or a motion for summary judgment on that issue. Nevertheless, our 1999 opinion held that the director defendants "may be able to secure the burden shifting benefit by demonstrating either sufficient independent director approval or fully informed shareholder approval." [83]

Accordingly, when this case was previously remanded in 1999, the director defendants had two procedural options with regard to the issue of burden shifting: a pretrial motion for summary judgment or a motion during trial. In this case, the record reflects that the director defendants did not make a motion for summary judgment prior to trial and did not ask for a ruling on the issue of burden shifting during trial. In fact, during the pretrial conference, the director defendants accepted the burden of proving entire fairness at trial and insisted that the Court of Chancery permit them to present their evidence first. The director defendants' attorney stated the following:

> [The shareholder plaintiffs argue] we have the burden of proof. The scheduling order acknowledges we would go first with respect to the development and presentation of expert reports. I have been preparing on this assumption, and with no reason not to, until last week, that that would be the order in which we would be proceeding.

Obviously, the director defendants' experts were going to address the issue of entire fairness on the merits and not burden shifting. Moreover, the director defendants insisted that, because they had the burden of proof, they alone were entitled to present rebuttal evidence. The trial proceeded on that basis.

This motion for clarification suggests that upon remand the director defendants are now entitled to argue that the Court of Chancery's posttrial opinion could conclude that the burden of proving entire fairness shifted to the shareholder plaintiffs during the course of trial, even though the director defendants never asked for such a ruling. In the absence of a request by the director defendants for a determination either before or during trial, that the burden had shifted to the shareholder plaintiffs, the burden of proving entire fairness remained with the director defendants throughout the trial.[84] Accordingly, upon remand, the Court of Chancery's posttrial opinion must decide if the director defendants sustained their burden of proving entire fairness and, if not, whether the director defendants are exculpated by the Section 102(b)(7) charter provision.

This matter is remanded to the Court of Chancery. The mandate shall issue immediately.

**82.** *Emerald Partners v. Berlin,* Del.Supr., 726 A.2d 1215, 1223 (1999).

**83.** *Id.*

**84.** If the burden of proving entire fairness had shifted to the shareholder plaintiffs during trial, however, the shareholder plaintiffs would have been entitled to present rebuttal evidence on the issue of entire fairness rather than the director defendants.