*Mullen v. Bell*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of June, two thousand twenty-five.

PRESENT:
> DENNY CHIN,
> RICHARD J. SULLIVAN,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

---

JEFFREY MULLEN, individually and on behalf of all others similarly situated,

    *Lead-Plaintiff-Appellant,*

JUSTIN CARNAHAN, THOMAS BENNETT, ROBERT IRWIN,

    *Lead-Plaintiffs,*

    v.                       No. 24-2291

MARC BELL, JAMES LACHANCE, STRATTON SCLAVOS, MATTHEW EBY, DANIEL STATON, PHILIP KRIM, CHRIS HOLLOD, WISDOM LU, TOMMY STADLEN, BORIS REVSIN, MICHAEL KIM, TAILWIND TWO SPONSOR LLC, TERRAN ORBITAL OPERATING CORPORATION, f.k.a. Terran Orbital Corporation, TERRAN ORBITAL CORPORATION, f.k.a. Tailwind Two Acquisition Corp.,

*Defendants-Appellees.*[*]

| | |
|---|---|
| **For Lead-Plaintiff-Appellant:** | Olimpio Lee Squitieri, Squitieri & Fearon, LLP, New York, NY. |
| **For Defendants-Appellees:** | Paul Alessio Mezzina, King & Spalding LLP, Washington, DC; Brian P. Miller, King & Spalding LLP, Miami, FL. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Jesse M. Furman, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the July 29, 2024 judgment of the district court is **AFFIRMED**.

Jeffrey Mullen appeals from the district court's dismissal of his amended class-action complaint, which asserts causes of action under Delaware state law

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

against the directors of Terran Orbital Corporation ("Old Terran") for breach of fiduciary duty and against Tailwind Two Acquisition Corp. ("TTAC"), the TTAC directors, and Tailwind Two Sponsor LLC ("TTS") for aiding and abetting that alleged breach of fiduciary duty.[1] We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

This case stems from a merger between Old Terran, which was a privately held Delaware corporation, and TTAC, which was a publicly traded special purpose acquisition company. The goal of this merger was for Old Terran to become a publicly traded company without incurring the expense and regulatory burden of an initial public offering. Under Delaware law, a vote of Old Terran's shareholders was required to approve the merger. But according to Mullen – a former employee of Old Terran who held stock in the company – his vote to approve the merger was induced by a misleading consent solicitation, which failed to inform him of material changes to the terms of the merger. Mullen further alleged that the consent solicitation failed to provide him with a full and fair disclosure of his appraisal rights, which permitted him to request the fair market

---

[1] Following the merger of Old Terran and TTAC, Old Terran is now known as Terran Orbital Operating Corporation, and TTAC is now known as Terran Orbital Corporation.

value of his Old Terran stock rather than receive shares in the post-merger company. Mullen asserted that by these acts and omissions, the Old Terran directors breached their fiduciary duty to him and that TTAC, the TTAC directors, and TTS aided and abetted that breach. The district court disagreed, concluding that Mullen failed to state a claim because he did not plausibly allege that the Old Terran directors engaged in bad faith or acted out of self-interest. Mullen timely appealed.

"We review *de novo* a district court's dismissal of a complaint for failure to state a claim." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 351 (2d Cir. 2022). In doing so, "we accept the material facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Nine W. LBO Sec. Litig.*, 87 F.4th 130, 140 (2d Cir. 2023). We may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In other words, a plaintiff must

4

"plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and that establishes "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Delaware law is clear that courts must apply a presumption, known as the business judgment rule, "that in making a business decision[,] the directors of a corporation acted on an informed basis, in good faith[,] and in the honest belief that the action taken was in the best interests of the company." *In re Match Grp., Inc. Derivative Litig.*, 315 A.3d 446, 459 (Del. 2024) (first alteration in original) (internal quotation marks omitted). As a result, a stockholder who challenges a board's business decision "assumes the burden of providing evidence that directors, in reaching their challenged decision, breached any one of the triads of their fiduciary duty – good faith, loyalty[,] or due care." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) (emphasis omitted). Moreover, where – as here – the corporation's certificate of incorporation contains a clause that exculpates its directors from liability for monetary damages for a breach of the duty of care, *see* Del. Code Ann. tit. 8, § 102(b)(7), a plaintiff must plausibly allege a breach of either the duty of loyalty or the duty of good faith, *see Emerald Partners v. Berlin*, 787 A.2d 85, 92 (Del. 2001).

On appeal, Mullen contends that Old Terran's directors breached their duty of loyalty by making false and misleading statements in the consent solicitation. It is true that "Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Arnold v. Soc'y for Sav. Bancorp, Inc.*, 650 A.2d 1270, 1277 (Del. 1994) (internal quotation marks omitted). But Delaware courts have recognized that "the duty of disclosure sounds in the fiduciary duties of both care and loyalty" and thus "certain violations fall within the coverage of exculpatory charter provisions authorized by [section] 102(b)(7)." *In re GGP, Inc. Stockholder Litig.*, 282 A.3d 37, 63 (Del. 2022). To avoid the exculpatory provision, Mullen needed to "allege[] or plead[] facts sufficient to support the inference that the disclosure violation was made in bad faith, knowingly[,] or intentionally," thereby implicating the duty of loyalty. *Id.* at 64 (internal quotation marks omitted). This he has failed to do.[2]

---

[2] Mullen contends that no showing of bad faith is required because "breach of a disclosure duty while soliciting shareholder action *is* a breach of fiduciary duty of loyalty." Mullen Br. at 18. There is some support for this proposition in Delaware law, but only for "board action that interferes with a corporate election or a stockholder's voting rights in contests for control." *Coster v. UIP Cos.*, 300 A.3d 656, 672 (Del. 2023). Mullen's complaint does not implicate elections to the board, and these cases are therefore inapposite.

6

As alleged in Mullen's complaint, the consent solicitation directed Old Terran shareholders to a February 14, 2022 Form S-4 Registration Statement, which outlined several conditions for the merger to move forward. These conditions included receiving the consent of the Old Terran shareholders and maintaining the net debt of the new company below a certain threshold. The Registration Statement further explained that TTAC shareholders could redeem their shares for cash upon the consummation of the merger.

Mullen first asserts that the Registration Statement falsely represented that "there was a maximum redemption condition of 85%" when in reality "the ultimate redemption rate was over 95%." J. App'x at 93. The Registration Statement made clear, however, that there was no "specified maximum redemption threshold." *Id.* at 318. And while the Registration Statement indicated that an eighty-five percent redemption rate was "the maximum number of redemptions that may occur" and "still satisfy" the merger's net debt condition, *id.* at 345, the Registration Statement explicitly warned shareholders that the parties to the merger could waive that condition, which is precisely what occurred here. We therefore agree with the district court that Mullen failed to adequately

7

allege that this constituted a materially misleading statement made knowingly, intentionally, or in bad faith.

Mullen next focuses on the Registration Statement's representation that, even at the maximum redemption rate, the cash and cash equivalents of the merged company would be $179.1 million. In fact, the cash and cash equivalents after the merger were only $76.7 million. But again, Mullen did not adequately allege that this constituted a breach of the duty of loyalty because the Registration Statement (1) simply provided a hypothetical estimate based on the maximum redemption rate that would still satisfy the net debt condition, and (2), as noted above, made clear that the net debt condition was waivable.

Mullen also alleges that the Registration Statement was misleading because it did not disclose that the merger agreement had been twice amended – first, to remove the net debt condition and add an eighty-five percent redemption cap, and second, to remove that redemption cap. But each of these changes was made *after* the Registration Statement and consent solicitation were issued, and Delaware law is clear that corporate directors need only disclose "material information *within the board's control* when it seeks shareholder action." *Arnold*, 650 A.2d at 1277 (emphasis added) (internal quotation marks omitted). Accordingly, because it is

8

undisputed that these changes to the merger agreement were not known at the time the consent solicitation and Registration Statement were issued, the directors did not breach their duty of disclosure.

Mullen next argues that the Registration Statement failed to disclose that $30 million of the $50.8 million of private placement in public equity ("PIPE") investment that supported the merger would be repaid to the PIPE investors even though those investors would also receive shares in the merged company. This allegation, however, ignores the Registration Statement's clear disclosure that the PIPE investors would "receive a quarterly fee of $1.875 million for sixteen (16) quarters," totaling $30 million, "in addition to the shares" in the merged company. J. App'x at 346. In fact, the Registration Statement explicitly warned that the Old Terran shareholders would "experience immediate dilution as a consequence of the issuance" of stock in the new company to the PIPE investors. *Id.* at 316.

Lastly, Mullen contends that the Registration Statement failed to disclose that one of the PIPE investors agreed to exchange some of Old Terran's debt for 2.4 million shares of common stock in the new company. But, as Mullen's complaint recognizes, this agreement did not occur until *after* the consent

9

solicitation and Registration Statement were issued, and thus the directors did not breach their duty of disclosure. *See Arnold*, 650 A.2d at 1277.

For all these reasons, we agree with the district court that Mullen has not identified any false or misleading statements in the consent solicitation and accompanying Registration Statement that would support a claim for breach of fiduciary duty sufficient to overcome the exculpatory provision in Old Terran's corporate charter.

Alternatively, Mullen argues that the Old Terran directors breached their fiduciary duty because the consent solicitation failed to advise shareholders of their appraisal rights. But when a merger is approved through written consent, Delaware law merely requires that shareholders be provided with notice of their appraisal rights not more than ten days after the effective date. *See* Del. Code Ann. tit. 8, § 262(d)(2). Here, the effective date was March 28, 2022, and the shareholders were provided with notice of their appraisal rights on April 1, 2022 – well within the ten-day window. Mullen nevertheless contends that the Old Terran directors had a common-law duty of disclosure to notify the shareholders of any information that might affect their appraisal rights *prior to* the merger. But Mullen has again failed to allege that any violation of this duty of disclosure "was

10

made in bad faith, knowingly[,] or intentionally," as would be required to overcome the exculpatory provision in Old Terran's charter. *GGP, Inc. Stockholder Litig.*, 282 A.3d at 64 (internal quotation marks omitted). As a result, we again agree with the district court that Mullen has failed to state a claim for breach of fiduciary duty based on the failure to notify the Old Terran shareholders of their appraisal rights in advance of the merger.

Because Mullen has not plausibly alleged a primary breach of fiduciary duty, his aiding and abetting claim against TTAC, the TTAC directors, and TTS must fail as well. *See Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

\*     \*     \*

We have considered Mullen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11