In re DWIGHT'S PIANO
COMPANY, Debtor.

**Official Committee of Unsecured Creditors, on its own behalf and on behalf of Dwight's Piano Company, et al., Plaintiffs,**

v.

**Karen L. Hendricks, et al., Defendants.**

Case No. 1–:04–CV–066.
Bankruptcy Court Case No. 01–13951.
Adversary Proceeding No. 02–1158.

United States District Court,
S.D. Ohio,
Western Division at Dayton.

Dec. 24, 2008.

Richard Stuart Wayne, William Kendall Flynn, Strauss & Troy, Cincinnati, OH, for et al., Plaintiffs.

Amanda L. Lenhart, David D. Black, Mark Alan Vanderlaan, Neal David Baker, Dinsmore & Shohl, Eric Wade Richardson, Glenn Virgil Whitaker, Kent Allen Britt, Vorys Sater Seymour & Pease, for et al., Defendants.

ENTRY AND ORDER OVERRULING THE UNSECURED CREDITORS' OBJECTIONS (Doc. # 151) TO THE CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS ON THEIR MOTION FOR SUMMARY JUDGMENT(Doc. # 134); ADOPTING THE CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS ON THE UNSECURED CREDITORS' MOTION FOR SUMMARY JUDGMENT IN ITS ENTIRETY; OVERRULING THE UNSECURED CREDITORS' OBJECTIONS (Doc. # 152) TO THE CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS ON THE DIRECTOR DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. # 143); ADOPTING THE CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS REGARDING THE DIRECTOR DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. # 143) IN ITS ENTIRETY; OVERRULING HENDRICKS' OBJECTIONS (Doc. # 153) TO THE CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS ON HER MOTION FOR SUMMARY JUDGMENT AND ADOPTING THE CHIEF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS ON HENDRICKS' MOTION FOR SUMMARY JUDGMENT (Doc. # 146) IN ITS ENTIRETY

THOMAS M. ROSE, District Judge.

Baldwin Piano and Organ Company ("Baldwin", n.k.a. Dwight's Piano Company) was a well-known piano manufacturer and marketer of acoustic and digital key-

board instruments. Baldwin was a corporation registered in the State of Delaware. On May 31, 2001, Baldwin filed for protection under Chapter 11 of Title 11 of the Bankruptcy Code.

This action was commenced in the Bankruptcy Court for the Southern District of Ohio in Cincinnati on May 30, 2002, as an Adversary Proceeding in Baldwin's Chapter 11 case. The Chapter 11 case is No. 01–13951 and the Adversary Proceeding is Case No. 02–1158.

About thirty days after the Adversary Proceeding was filed, the Director Defendants filed a motion in the United States District Court for the Southern District of Ohio, Western Division in Cincinnati, for withdrawal of reference. On May 12, 2003, this Motion was granted in Case No. 1:02–MC–031. The matter was then reassigned and given its current Case No. 1:04–CV–066.

The Plaintiffs in this action initially were the Official Committee of Unsecured Creditors of Baldwin (the "Unsecured Creditors") and four alleged Baldwin shareholders ("the Shareholder Plaintiffs"). The Defendants in this action initially were six Baldwin Directors (collectively the "Director Defendants") and Karen L. Hendricks ("Hendricks") who was both a director and officer of Baldwin.

Pursuant to Motions To Dismiss filed by the Defendants, this Court dismissed Plaintiffs' Second Claim for Relief for violations of Section 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 10b–5 promulgated thereunder and dismissed Plaintiffs' Third Claim for Relief for violation Section 20(a) of the Exchange Act. (Doc. # 9, incorrectly captioned as a ruling on motions for summary judgment.) This Court also dismissed Count One of the Complaint to the extent that it was brought by the Shareholder Plaintiffs. Remaining to be adjudicated were Count One of the Complaint brought by Unsecured Creditors against Hendricks and the Director Defendants for breach of fiduciary duty.

Following discovery, Motions for Summary Judgment were filed by the Unsecured Creditors, Hendricks and the Director Defendants. (Docs. # 45, # 66 and # 67.) These Motions for Summary Judgment were referred to Chief Magistrate Judge Michael R. Merz pursuant to 28 U.S.C. § 636(b). (Doc. # 68.)

Chief Magistrate Judge Merz issued Report and Recommendations on all three Motions for Summary Judgment. (Docs. # 134, 143, 146.) The unsuccessful party in each case filed objections and the successful party or parties filed responses to the objections. The District Judge has made a de novo review of the record on this matter, and the Motions for Summary Judgment in particular, and, pursuant to 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b) makes the following findings:

## UNSECURED CREDITOR'S MOTION FOR SUMMARY JUDGMENT

Chief Magistrate Judge Merz recommends that the Unsecured Creditor's Motion for Summary Judgment (Doc. # 45) be overruled because there are genuine issues of material fact as to whether all Defendants violated their fiduciary duties. To this, the Unsecured Creditors objected.

Upon consideration of the record in this matter, the Court finds that the Unsecured Creditor's Objections are not well founded and are hereby OVERRULED. Chief Magistrate Judge Merz's Report and Recommendations regarding the Unsecured Creditor's Motion for Summary Judgment is ADOPTED IN ITS ENTIRETY. The Unsecured Creditor's Motion for Summary Judgment is OVERRULED.

## DIRECTOR DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Chief Magistrate Judge Merz recommends that the Director Defendants' Motion for Summary Judgment be granted and the remaining claim against them be dismissed with prejudice. The Unsecured Creditors have not produced sufficient evidence to sustain a jury verdict against one or more of the Director Defendants for breach of their duty of loyalty. To this, the Unsecured Creditors object.

Chief Magistrate Judge Merz first finds that the Unsecured Creditors have offered no opposition to the assertion that they have no case against Director Defendant Heffernan. He then finds that the enhanced scrutiny standard of *Revlon* should not be applied to the Director Defendants. Chief Magistrate Judge Merz concludes that none of the three theories of liability asserted by the Unsecured Creditors against the Director Defendants are viable. The abdication theory is not viable because the evidence presented by the Unsecured Creditors does not support a conclusion that the Director Defendants breach their fiduciary duty by abdicating their duty to oversee management of the Company. The duty-to-disclose theory is not viable because the First Amended Complaint does not set forth actionable misrepresentations and the Unsecured Creditors have not offered any theory under which they could legitimately amend their First Amended Complaint to add additional alleged misrepresentations. Finally, the entrenchment theory is not viable because the Unsecured Creditors have offered no evidence from which a reasonable finder of fact could conclude that any of the Director Defendants violated a duty of loyalty to the Company by acting on any occasion to further their own interests. In sum, Chief Magistrate Judge Merz recommends that the Director Defendants' Motion for Summary Judgment be granted and the remaining Cause of Action against them be dismissed.

Upon consideration of the record in this matter, the Court finds that the Unsecured Creditor's Objections are not well founded and are hereby OVERRULED. Chief Magistrate Judge Merz's Report and Recommendations regarding the Director Defendants' Motion for Summary Judgment is ADOPTED IN ITS ENTIRETY. The Director Defendants' Motion for Summary Judgment is GRANTED.

## HENDRICK'S MOTION FOR SUMMARY JUDGMENT

Chief Magistrate Judge Merz recommends that Hendrick's Motion for Summary Judgment be granted as to the *Revlon* claim, granted as to the misrepresentation claims, granted as to the attempt of the Unsecured Creditors to recover damages for the corporation measured by the unpaid claims of creditors as of the date of bankruptcy and otherwise denied. To this, the Unsecured Creditors object.

The Unsecured Creditors agree that they cannot pursue and are not pursuing any direct claim against the Defendants. The Chief Magistrate Judge then determined that the Unsecured Creditors cannot rely on newly alleged misrepresentations that were not pled in their First Amended Complaint as briefly discussed above. He concluded, however, that the Unsecured Creditors have presented sufficient evidence from which a reasonable fact finder could conclude that Hendricks breach her duties of care and loyalty.

Upon consideration of the record in this matter, the Court finds that Hendricks' Objections are not well founded and are hereby OVERRULED. Chief Magistrate Judge Merz's Report and Recommendations regarding Hendricks' Motion for

Summary Judgment is ADOPTED IN ITS ENTIRETY.

Hendricks' Motion for Summary Judgment is GRANTED IN PART and OVERRULED IN PART. Hendricks' Motion for Summary Judgement is granted as to the *Revlon* claim, granted as to the misrepresentation claims and granted as to the attempt by the Unsecured Creditors to recover damages from the corporation measured by the unpaid claims of the creditors as of the date of bankruptcy. The Unsecured Creditors' claim against Hendricks for breach of her duties of care and loyalty remains to be adjudicated.

## REPORT AND RECOMMENDATIONS ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MICHAEL R. MERZ, United States Chief Magistrate Judge.

This case is before the Court on Plaintiff's Motion for Partial Summary Judgment of liability against all Defendants (Doc. No. 45). Defendants oppose the Motion (Doc. Nos. 76, 81) and Plaintiff has filed separate reply memoranda as to each set of Defendants (Doc. Nos. 93, 95).

The summary judgment motions in this case have been separately referred to the Magistrate Judge (Doc. No. 68). As dispositive motions, they require a report and recommendations. Although Defendants have also filed motions for summary judgment, the competing motions are not "true" cross-motions for summary judgment. Compare 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720 (1998), on the situation where parties make cross-motions but do not concede the facts are truly undisputed from the opposing party's perspective as well as their own.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F.3d 795 (6th Cir.1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510.

> The moving party
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *see also, Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir.1991) (citation omitted).

If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, (6th Cir.1992), *cert. denied*, 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### Presently Pending Claims

Plaintiff's claims which are at issue on the instant Motion are made in the First Amended Complaint ("FAC"), filed August 26, 2002[1]. On March 17, 2005, Judge Rose granted in part and denied in part Defendants' then-pending Motion for Summary Judgment, considering it under the standard for review of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) (Entry and Order, Doc. No. 9). He concluded:

> The Unsecured Creditors identified at least one allegation of actions taken by Board members that arguably entails a breach of the duty of disclosure which is a subset of the duty of loyalty. The duty of loyalty is one of the Board mem-

---

1. Plaintiffs moved to file a second amended complaint on February 5, 2007 (Doc. No. 27).

The Magistrate Judge denied that motion on August 10, 2007, and no appeal was taken.

bers' fiduciary duties and one that is not exculpated by Baldwin's Certificate of Incorporation.

However, the Shareholder Plaintiffs have not sufficiently pled a derivative action. Therefore, to the extent that Plaintiffs' breach-of-fiduciary duty claim is brought by the Shareholder Plaintiffs on a derivative basis, it is DISMISSED. In addition, the Shareholder Plaintiffs have not identified a remedy appropriate for a Delaware common law breach-of-fiduciary-duty claim brought on an individual basis. Therefore, to the extent the Shareholder Plaintiffs' breach-of-fiduciary-duty claim is brought on a individual basis, it is DISMISSED.

The Motions To Dismiss Plaintiffs' First Claim for Relief are GRANTED IN PART and OVERRULED IN PART. They are overruled insofar as the Unsecured Creditors have sufficiently pled a breach-of-fiduciary-duty claim against Hendricks and the Director Defendants. They are granted insofar as the Shareholder Plaintiffs have not sufficiently pled a breach-of-fiduciary-duty claim.

Next, Plaintiffs have not sufficiently pled any claims pursuant to Section 10(b) and Rule 10b(5). Therefore, the Motions To Dismiss Plaintiffs' Second Claim for Relief for violation of Section 10(b) and Rule 10b(5) are GRANTED. Plaintiffs' Second Claim for Relief is DISMISSED.

Finally, Plaintiffs' Section 20(a) claim is derivative of their Section 10(b) be claim which has been dismissed. Therefore, Hendricks' Motion To Dismiss Plaintiffs' Third Claim for Relief for violation of Section 20(a) is GRANTED. Plaintiffs' Third Claim for Relief is DISMISSED. *Id.* at 37–38. Thus the First Claim for Relief—breach of fiduciary duty by Defendant Hendricks and the Defendant Directors—is the claim remaining to be adjudicated. *Id.*

## Analysis

■ Plaintiff asserts that all Defendants[2] violated their fiduciary duties to the Debtor, Baldwin Piano and Organ Company, which they owed the Debtor as directors of the company under Delaware corporate law.[3] Those fiduciary duties are described as duties of care[4], loyalty, and good faith, the latter two being functionally the same. *Cede Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del.1993); *Stone v. Ritter*, 911 A.2d 362, 370 (Del.2006). Because courts are reluctant to interfere with the internal decisions of corporations, directors of most American corporations get the benefit of the business judgment rule, which is a presumption that in making business decisions, directors are fully informed and act in the best interest of the company and its shareholders. *Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984); *In re Walt Disney Co. Derivative Litigation*, 907 A.2d 693, 747 (Del.Ch.2005).

However, Plaintiff argues, in the context of a sale or break up of the business, directors of Delaware corporations do not get the benefit of the business judgment rule. Under those circumstances, their

---

**2.** Except Defendant Director Heffernan, against whom summary judgment is not sought.

**3.** There is apparent agreement among the parties that Delaware law governs the question of Defendants' liability. See Entry and order, Doc. No. 9, at 5.

**4.** Judge Rose has previously determined that Delaware corporate law and the Baldwin Certificate of Incorporation absolve Defendant Directors and Defendant Hendricks in her capacity as a director from liability for any breach of the duty of care. Entry and Order, Doc. No. 9 at 7, citing *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del.2001).

sole duty is to achieve the maximum value at a sale for the stockholders' benefit. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986); *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1288 (Del.1989). Once a company comes within the *Revlon* doctrine, Delaware law requires enhanced scrutiny of director conduct and directors have the burden of proving that they were adequately informed of all material facts and that they acted reasonably. *Paramount Communications, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 43–45 (Del.1994). Application of *Revlon* is triggered, Plaintiff says,

> in any one of three specific circumstances: (i) where a corporation initiates an active bidding process seeking to sell itself; (ii) where a corporation initiates a reorganization involving a breakup of the company; and (iii) where, in response to a bidder's offer, a company abandons its long-term strategy to pursue an alternative transaction involving a breakup of the company.

(Plaintiff's Motion, Doc. No. 45, at 47, citing *Paramount Communications, Inc. v. Time, Incorporated,* 571 A.2d 1140, 1150 (Del.1989)).

Defendant Hendricks in opposing the Motion does not disagree with this general statement of Delaware corporate law. Instead, she argues at length that none of the triggering events required to bring *Revlon* into play actually happened during the relevant time period at Baldwin Piano. She contends:

> 1) during Defendants' tenure, they did not commit to selling the Company; 2) Baldwin never initiated a bidding process or a sale or break-up of the Company; 3) the Board never abandoned Baldwin's long-term strategic plan; and 4) Baldwin never received any bona fide offers for its music division or the Com-

pany as a whole. Accordingly, there was no change of control transaction for which Hendricks and the Director Defendants would have to prove the "entire fairness" of their conduct or that a court would analyze with "enhanced scrutiny."

(Hendricks' Memorandum in Opposition, Doc. No. 81, at 1.) She also argues at length that the evidence relied on by Plaintiff does not prove that she engaged in self-dealing or abused her corporate position. *Id.* at 19–23.

In its Reply Memorandum as to defendant Hendricks (Doc. No. 93), Plaintiff argues at length the evidence which shows that Baldwin was for sale and concludes "defendant's response is essentially a counter statement of facts, at best suggesting a genuinely disputed question." *Id.* at 2. As to Defendant Hendricks' duty of loyalty, Plaintiff captions this portion of the Reply Memorandum "There is a persuasive record from which to conclude that Hendricks violated her duty of absolute good faith and undivided loyalty."

The Director Defendants' position parallels that of Defendant Hendricks; they also assert that the events needed to trigger *Revlon* duties did not occur or, to put it another way, the events on which Plaintiff relies for triggering do not unequivocally support that conclusion (Memorandum in Opposition, Doc. No. 76). Furthermore, they contend that even if *Revlon* did apply, there is not any evidence, much less unequivocal evidence, from which to conclude they did not meet their *Revlon* obligations.

In its Reply Memorandum as to the Director Defendants (Doc. No. 95), Plaintiff again recites at length the evidence supporting a conclusion that the company was for sale. *Id.* at 2–8. It then argues for ten pages (9–19) the evidence which it says "supports a conclusion that the Di-

rector Defendants failed their duties of good faith and loyalty." *Id.* at 9.

■ A court can grant a plaintiff summary judgment only if, on the undisputed facts, a reasonable fact finder would be compelled to grant plaintiff judgment. Most importantly, trial judges may not use summary judgment motions as occasions to weigh the evidence, unless the evidence opposing the motion is so insubstantial that it would not support a jury verdict.

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes [v. S.H. Kress & Co.],* 398 U.S. [144] at 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 [ (1970) ].

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Russo v. City of Cincinnati,* 953 F.2d 1036, 1041–42 (6th Cir.1992). There are innumerable competing inferences, material to the determination of this case, which could be drawn from the evidence which has been presented by the parties on this Motion. Only when the credibility of the witnesses has been weighed, which cannot be done on a summary judgment motion, can those ultimate questions of fact be decided.

Therefore Plaintiff's Motion for Summary Judgment should be denied.

## REPORT AND RECOMMENDATIONS ON DEFENDANT DIRECTORS' MOTION FOR SUMMARY JUDGMENT

This case is before the Court on Motion for Summary Judgment of Defendants Joseph H. Head, Jr., George E. Castrucci, Roger L. Howe, William B. Connell, John H. Gutfreund, and James T. Heffernan (collectively, the "Director Defendants") (Doc. No. 67). Plaintiff has combined its opposition to this Motion with its opposition to the Summary Motion of Defendant Karen Hendricks in one document (Doc. No. 74), and the Director Defendants have filed a reply memorandum in support (Doc. No. 102).

As noted in the Report and Recommendations on Plaintiff's summary judgment motion, although all parties have sought summary judgment in this case, these are not true "cross-motion" for summary judgment. See 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720 (1998), on the situation where parties make cross-motions but do not concede the facts are truly undisputed from the opposing party's perspective as well as their own.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys*, 87 F.3d 795 (6th Cir.1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510.

The moving party

[A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *see also, Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir.1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, (6th Cir.1992), *cert. denied*, 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## Claims Pending Against the Director Defendants

In deciding Defendants' Motions to Dismiss under Fed.R.Civ.P. 12(b)(6), Judge Rose determined that Plaintiff had properly pled in the First Amended Complaint ("FAC")[1] a claim for relief against the Director Defendants for breach of their fiduciary duty of loyalty to Baldwin Piano & Organ. Plaintiff's second and third claims for relief under federal securities law were dismissed and Judge Rose found that Baldwin's Certificate of Incorporation exculpated the Director Defendants from any liability for breach their fiduciary duty of care. (Entry and Order, Doc. No. 9.) Thus the question before the Court on the instant Motion is whether Plaintiff has produced sufficient evidence to sustain a jury verdict against one or more of the Director Defendants for breach of their fiduciary duty of loyalty.

## Factual Background

According to Plaintiff, Baldwin's board of directors hired Defendant Karen L. Hendricks in late 1994 as president and chief executive officer to replace R.S. "Dick" Harrison, who had served in that capacity since leading a management buyout of Baldwin from bankruptcy in the 1980s. (FAC at ¶ 3.)

The Director Defendants were all outside directors (i.e., not employees of Baldwin) and had a good deal of corporate experience with other companies. Defendant Head had previously been a partner in a leading Cincinnati law firm (Graydon, Head, and Ritchey) and was the Chairman of Atkins & Pearce, Inc. See 1999 Proxy Statement, excerpt attached at Exh. 2 to the Affidavit of William Connell 1 ("Connell Aff."). Defendant Castrucci was an executive officer of Great American Broadcasting and Defendant Connell had served in a similar capacity at Procter & Gamble. *Id.* Defendant Howe had extensive board experience—including positions with Cintas Corporation and Cincinnati Bell—in addition to his own executive experience. *Id.* These directors were joined in 1998 by John Gutfreund, the former CEO and Chairman of leading investment bank Salomon Brothers, and in 2000 by James Heffernan, who served on the boards of United Natural Foods and Columbia Energy Group. See *Id.*

Defendant Hendricks describes—in her deposition and an Affidavit attached to her own Motion for Summary Judgment—the condition of Baldwin, the challenges it faced in the mid to late '90's, and the efforts made to turn the company around

When Hendricks joined Baldwin, the Company faced serious competition from Asian piano manufacturers, who were able to produce pianos more efficiently and at a lower cost than Baldwin. (Hendricks Depo. 122:1–6) Baldwin also faced internal obstacles to its success, including outdated manufacturing processes; inadequate infrastructure, such as lacking computer systems; and nonexclusive dealer relationships that allowed Baldwin dealers to sell competing pianos. (Hendricks Affidavit at ¶¶ 4–6.)

Shortly after Hendricks was hired, Baldwin adopted a five-year strategic plan

---

1. The First Amended Complaint is the operative pleading at this point in the case. It was docketed as Doc. No. 22 in the Bankruptcy Court where it was filed August 26, 2002, before this Court adopted electronic filing. The Clerk has now scanned and attached the Bankruptcy Court filings to the docket in this Court (See Doc. Nos. 137, 138, 139). Plaintiff's motion to file a second amended complaint was denied over a year ago. (See Doc. No. 38)

that was designed to improve the Company's financial performance and, by extension, lead to increased value for shareholders. See Hendricks Depo. at 22:6–17. The plan centered on obtaining substantial growth in Baldwin's three core business—Music (piano manufacturing), Contract Electronics, and Keyboard Acceptance Corp. (piano financing). *Id.* at 23:19–24. Additionally, Baldwin focused on exiting businesses that were not considered "core" businesses, such as the church organ and contract furniture businesses. *Id.* at p. 24.

While the Board and Hendricks worked to implement the Company's strategic plan, they were continually confronted with additional external obstacles. Faced with uncertainty from their sole supplier of piano plates, Baldwin decided to build a piano plate factory in Brazil. *Id.* at 164:14–17. And in 1998, the Company faced ramifications from currency devaluations in Asia, which led to steep declines in the price of pianos from Baldwin's competitors in that region. *Id.* at 165:12–166:25.

Although the retail financing business was sold in 2000 and the contract electronics division a year later, these sales did not generate enough cash to allow the core piano business to continue and Baldwin filed for Chapter 11 protection on May 31, 2001.

### Positions of the Parties

**The Directors' Motion**

The Director Defendants understand Plaintiff to be asserting two theories of breach of fiduciary duty

(1) that the Director Defendants ignored warnings and abdicated their oversight authority to favor Baldwin's CEO, Karen Hendricks; and (2) that the Director Defendants violated their duty

of disclosure—a subset of the duty of loyalty—through public statements that Plaintiff contends were false. See, e.g., FAC ¶¶ 39(g)-(I).

(Doc. No. 67 at 4.)

The first of these, which the Director Defendants refer to as Plaintiff's "abdication theory," is more specifically pled in the FAC as follows:

"[T]he Director Defendants had knowledge of gross mismanagement, primarily that of Hendricks," and that despite "having knowledge of such gross mismanagement, the Director Defendants acted, and failed to act, in ways violating established fiduciary duties and causing ever increasing substantial financial damage to the Company, ultimately leading to insolvency and bankruptcy." FAC, ¶ 38.

[T]he Director Defendants "placed [Hendricks'] personal interests ahead of those of the Company, its shareholders and creditors," and "abdicated their legal obligation to actively supervise management and acted [sic] solely in the best interests of Baldwin shareholders." FAC, ¶ 39(I).

(Doc., No. 67 at 6, quoting the FAC as shown.)

The second theory of liability, as the Director Defendants understand it, is for breach of the duty of disclosure, a subset of the duty of loyalty, by making misrepresentations. When Judge Rose decided the Motions to Dismiss, he noted that Plaintiff had listed fifteen allegations of misrepresentation in an Appendix to the Memorandum in Response and found that none of them satisfied the pleading requirements for a securities fraud claim (Entry and Order, Doc. No. 9, at 36.) Earlier in the same decision, he had found that at least one allegation of misrepresentation—the February 28, 2001, statement that "the goal of restoring Baldwin to profitability is

close at hand"—made at FAC ¶¶ 114–116 was sufficient under Fed.R.Civ.P. 12(b)(6). (Entry and Order, Doc. No. 9, at 10–11.)

The Director Defendants also understand Plaintiff to be asserting, as an alternative theory of liability or description of their duties as directors, that they should be subject to the "enhanced entire fairness scrutiny" applicable when a business is for sale, as prescribed in *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del.1986); and *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1288 (Del.1989) (Motion Doc. No. 67, at 18).

**Plaintiff's Response**

Plaintiff has combined its opposition to Defendant Hendricks' Motion for Summary Judgment and the Defendant Directors' Motion into one document, Plaintiff's Combined Memorandum, Doc. No. 74, so the arguments directed to the two sets of Defendants must be disentangled.

Plaintiff argues at length that the questions (1) whether the *Revlon* standard was triggered and (2) whether the Director Defendants breached their fiduciary duties under *Caremark*[2] are questions of fact for trial (Combined Memorandum, Doc. No. 74 at 1–8) It bases its argument that the Director Defendants failed in their oversight function on extended citation to the report of its expert Bart A. Brown. *Id.* at 10–15. It asserts that "knowing misrepresentations made in connection with volunteered predictions of future financial performance, or in connection with a request for shareholder action, violate a director's fiduciary duty of complete candor," followed by eight pages of asserted misrepresentations. *Id.* at 15–23. Finally, it asserts there is a genuine issue of material fact whether defendants acted to entrench themselves. *Id.* at 23–29. It ends the

Combined Memorandum by agreeing with the Director Defendants that it cannot pursue and is therefore not pursuing any direct claim of any creditor against the Defendants. *Id.* at 29–30.

**Directors' Reply**

The Director Defendants in their Reply Memorandum (Doc. No. 102) assert there is not sufficient evidence to support triggering a *Revlon* inquiry (*Id.* at 2–17) or that they failed in their duty if *Revlon* applies (*Id.* at 7–10) or that they are liable under the *Caremark* standard (*Id.* at 10–14). They note that all of the claimed misrepresentations relied on to prove violation of a duty to disclose are "previously unalleged statements." *Id.* at 14. Finally, they assert there is no evidence they sought to entrench themselves. *Id.* at 18–20.

### Analysis

**Defendant Heffernan:** Although it does not expressly concede the point, Plaintiff offers no opposition to the assertion that it has no case against Defendant Heffernan. All claims against him should be dismissed with prejudice on that basis.

■ **Revlon:** The Revlon standard for evaluating a director's fiduciary duty of loyalty is triggered

> in any one of three specific circumstances: (i) where a corporation initiates an active bidding process seeking to sell itself; (ii) where a corporation initiates a reorganization involving a breakup of the company; and (iii) where, in response to a bidder's offer, a company abandons its long-term strategy to pursue an alternative transaction involving a breakup of the company.

*Paramount Communications, Inc. v. Time, Incorporated*, 571 A.2d 1140, 1150 (Del.1989), cited by Plaintiff as controlling

---

2. *In re Caremark Int'l Inc. Deriv. Litigation,*    698 A.2d 959 (Del.Ch.1996).

authority, Doc. No. 74 at 1, n. 1. The Delaware Supreme Court has also formulated the Revlon test somewhat differently as follows:

> The directors of a corporation "have the obligation of acting reasonably to seek the transaction offering the best value reasonably available to the stockholders." *Paramount Communications, Inc. v. QVC Network, Inc.*, Del.Supr., 637 A.2d 34, 43 (1994), in at least the following three scenarios: (1) "when a corporation initiates an active bidding process seeking to sell itself or to effect a business reorganization involving a clear break-up of the company," *Paramount Communications, Inc. v. Time Inc.*, Del.Supr., 571 A.2d 1140, 1150 (1990) [Time–Warner]; (2) "where, in response to a bidder's offer, a target abandons its long-term strategy and seeks an alternative transaction involving the break-up of the company," *id.*; or (3) when approval of a transaction results in a "sale or change of control," *QVC*, 637 A.2d at 42–43, 47.

*Arnold v. Society for Sav. Bancorp.*, 650 A.2d 1270, 1290 (Del.1994)

It is very clear from the record that Baldwin was considering a sale of all or part of its business—assets or parts of the business as going concerns—as part of deciding what to do to deal with its very serious financial crisis at least as early as 1999. Selling all or part of the business was plainly something that Lehman Brothers, as the retained investment banker of Baldwin, was considering on Baldwin's behalf in early 1999. As Plaintiff notes, Defendant Hendricks told the Board in July, 1999, that meetings were being scheduled at a "high level" with Questor and an exploratory meeting had been set with Steinway. Employees Marks and Kimble made substantial progress toward a management buyout of Baldwin through A440,

a venture in which they invited Defendant Hendricks herself to participate. There is some evidence that Hendricks was considering a management buyout herself. In September, 1999, the board was given a liquidation analysis and was considering bankruptcy if the company could not sell sufficient assets to be able to continue its core piano business.

None of these facts however, which are the facts relied upon by Plaintiff, establish that the company had put itself up for sale "by initiating an active bidding process," either to sell the company or to effect a reorganization involving a clear break-up. There is no evidence that any such active bidding process ever occurred. Lehman Brothers talked with a number of possible buyers but was unable to generate a prospect interested in buying the company. While initiating an active bidding process could have been one of the things Baldwin did in response to its desperate situation, in fact it did not do so.

Nor would the facts support a finding that "in response to a bidder's offer, [Baldwin] abandoned its long-term strategy and [sought] an alternative transaction involving the break-up of the company." *Arnold, supra.* There never was any such bid which resulted in a change of strategy.

Finally, there was never a transaction which resulted in the sale of the company or a change of its control. *Arnold, supra, citing QVC.*

Therefore, there are no facts upon which a reasonable finder of fact could conclude that the enhanced scrutiny standard of Revlon should be applied to the Director Defendants.

**Abdication Theory:** Plaintiff asserts, as noted above, that the Director Defendants abdicated their responsibility to oversee management and essentially delegated the

management to Defendant Hendricks, in violation of their fiduciary duty of loyalty.

The Court has already held (Entry and Order, Doc. No. 9) that any lack of care argument which might be made under this theory is not viable because the Director Defendants are exculpated by the Certificate of Incorporation, as permitted by the Delaware Code.

Plaintiff relies on four cases as setting forth the authority for this theory, *Cede & Co. v. Technicolor Inc.*, 634 A.2d 345 (Del. 1993); *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261 (Del.1989); *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del.Ch.1996); and *Stone v. Ritter*, 911 A.2d 362 (Del.2006). The Director Defendants accepted that case law as setting the appropriate standard, but argue that the evidence unequivocally establishes that they met the standard.

The Court need not reach that question because most of Plaintiff's proof that the Defendant Directors abdicated their responsibility is taken from the unsworn expert report of Bart A. Brown. (See Combined Memorandum in Response, Doc. No. 74, at 10–15.) Fed.R.Civ.P. 56(e) requires that affidavits setting forth facts relied on to defeat summary judgment must be upon personal knowledge. Here, the Plaintiff's principal reliance—indeed, almost all of its reliance—is on a completely unsworn report.[3]

The only references in this portion of the Combined Memorandum to evidence allowable under Fed.R.Civ.P. 56(e) show that the Board was aware when it adopted Defendant Hendricks' proposed strategic plan that there were inadequate systems in place for forecasting business results, that those systems never became fully satisfactory, and that it was eventually the dealers who forced the board to discharge Defendant Hendricks. (Combined Memorandum, Doc. No. 74, at 12 and 14, citing Connell depo.) This evidence, even construed most strongly in favor of the Plaintiff, would not support a conclusion that the Defendant Directors breached their fiduciary duty by abdicating their duty to oversee management of the company.

**Duty to Disclose Theory:** As the Director Defendants point out, all of the alleged misrepresentations relied on by the Plaintiff in the Combined Memorandum are new allegations, made for the first time in that document. In other words, they are not the asserted misrepresentations in the FAC which were meticulously analyzed by Judge Rose in denying the Motions to Dismiss. Plaintiff has not offered any theory under which a party can legitimately amend its complaint in the course of responding to a motion for summary judgment.

**Entrenchment Theory:** Finally, Plaintiff seeks to hold the Director Defendants liable on a theory that they acted to entrench themselves, in violation of their fiduciary duty to the shareholders.

■ Plaintiff offers no evidence from which a reasonable fact finder could conclude that any of the Director Defendants violated his duty of loyalty to the company by acting on any occasion to further his own interests. The authority cited by the Director Defendants unequivocally holds that acting to maintain one's own position as a director does not count as a breach of

---

3. Plaintiff's references to the Brown report in the Combined Memorandum do not tell the Court where in the record to find that report. The report is in fact attached to Mr. Brown's Declaration which was filed May 9, 2008 (Doc. No. 87). In the Declaration, Mr. Brown only verifies his identity and the authenticity of the attached 77–page report. This is, of course, far from meeting the personal knowledge standard of Fed.R.Civ.P. 56(e) as to the contents of the report.

fiduciary duty (See Doc. No. 67 at 8–9; Doc. No. 102 at 20, n. 35.) But even if that were a breach, Plaintiff points to no evidence of such behavior by any one of the Director Defendants.

■ Plaintiff instead argues that the Director Defendants acted to entrench Defendant Hendricks. However, the argument is unsupported by evidence. Plaintiff does not even point to any purported evidence with respect to any Director Defendant except for John Gutfreund. Much of the evidence Plaintiff points to of communication between Hendricks and Gutfreund occurred before he became a director. Plaintiff points to no evidence of any improper or corrupt motive on the part of any Director Defendant for any support they may have given to Defendant Hendricks' management of the company. The fact that one or more directors of a publicly-held company support the management in the face of shareholder or dealer criticism does not support an inference that they are breaching their duty of loyalty in doing so. Plaintiff's argument appears to be that Defendant Hendricks was doing such a poor job that there must have been some improper motive for keeping her. To invite the finder of fact to make that inference would be to invite speculation.

## Conclusion

Based on the foregoing analysis, the Director Defendants' Motion for Summary Judgment should be granted and the FAC dismissed as to them with prejudice.

## REPORT AND RECOMMENDATIONS ON DEFENDANT HENDRICKS' MOTION FOR SUMMARY JUDGMENT

This case is before the Court on Motion for Summary Judgment of Defendant Karen Hendricks (Doc. No. 66). Plaintiff has combined its opposition to this Motion with its opposition to the Summary Motion of the Director Defendants in one document (Doc. No. 74), and Defendant Hendricks has filed a reply memorandum in support (Doc. No. 101).

As noted in the Report and Recommendations on Plaintiff's summary judgment motion, although all parties have sought summary judgment in this case, these are not true "cross-motion" for summary judgment. See 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720 (1998), on the situation where parties make cross-motions but do not concede the facts are truly undisputed from the opposing party's perspective as well as their own.

The standard for deciding summary judgment motions set forth in the Reports and Recommendations on Plaintiff's summary judgment motion and that of the Director Defendants (Doc. Nos. 134, 143) is fully applicable here and incorporated by reference.

### Claims Pending Against Defendant Hendricks

■ In deciding Defendants' Motions to Dismiss under Fed.R.Civ.P. 12(b)(6), Judge Rose determined that Plaintiff had properly pled in the First Amended Complaint ("FAC")[1] a claim for relief against all Defendants for breach of their fiduciary duty of loyalty to Baldwin Piano &

---

1. The First Amended Complaint is the operative pleading at this point in the case. It was docketed as Doc. No. 22 in the Bankruptcy Court where it was filed August 26, 2002, before this Court adopted electronic filing. The Clerk has now scanned and attached the Bankruptcy Court filings to the docket in this Court (See Doc. Nos. 137–144). Plaintiff's motion to file a second amended complaint was denied over a year ago. (See Doc. No. 38)

Organ. Plaintiff's second and third claims for relief under federal securities law were dismissed and Judge Rose found that Baldwin's Certificate of Incorporation exculpated the Director Defendants from any liability for breach their fiduciary duty of care, but that such exculpation did not apply to Defendant Hendricks in her capacity as CEO and President. (Entry and Order, Doc. No. 9, at 13.) Thus the question before the Court on the instant Motion is whether Plaintiff has produced sufficient evidence to sustain a jury verdict against Defendant Hendricks for breach of her fiduciary duty of loyalty or care.

The factual background set forth in the Report and Recommendations on Defendant Directors' Motion for Summary Judgment (Doc. No. 143 at 4–6) is incorporated herein by reference

### Positions of the Parties

### Defendant Hendricks' Motion

Defendant Hendricks makes the following arguments:

1. She is not liable on a theory of breach of fiduciary duty for failing to disclose information or by making misrepresentations. (Hendricks' Motion, Doc. No. 66, at 6–7.)

2. She is not liable under a theory that she violated her oversight duties under *In re Caremark International, Inc., Derivative Litigation*, 698 A.2d 959 (Del.Ch.1996). *Id.* at 7–10.

3. She is not liable on a theory that she breached her fiduciary duty of loyalty by controlling the selection of directors to preserve her own position of control. *Id.* at 10–12.

4. She is not liable on a theory she breached her fiduciary duty of loyalty by engaging in self-dealing or abusing her corporate position. *Id.* at 12–18.

5. Plaintiff cannot bring a direct action against Defendant Hendricks for losses by creditors. *Id.* at 18–20.

### Plaintiff's Response

Plaintiff has combined its opposition to Defendant Hendricks' Motion for Summary Judgment and the Defendant Directors' Motion into one document, Plaintiff's Combined Memorandum, Doc. No. 74, so the arguments directed to the two sets of Defendants must be disentangled.

Plaintiff argues at length that the questions (1) whether the *Revlon* standard was triggered and (2) whether the Defendants breached their fiduciary duties under *Caremark, supra*, are questions of fact for trial (Combined Memorandum, Doc. No. 74 at 1–8) It bases its argument that the Defendants failed in their oversight function on extended citation to the report of its expert Bart A. Brown. *Id.* at 10–15. It asserts that "knowing misrepresentations made in connection with volunteered predictions of future financial performance, or in connection with a request for shareholder action, violate a director's fiduciary duty of complete candor," followed by eight pages of asserted misrepresentations. *Id.* at 15–23. Finally, it asserts there is a genuine issue of material fact whether defendants acted to entrench themselves. *Id.* at 23–29. It ends the Combined Memorandum by agreeing with the Director Defendants that it cannot pursue and is therefore not pursuing any direct claim of any creditor against the Defendants. *Id.* at 29–30.

### Defendant Hendricks' Reply

Defendant Hendricks argues that, because Plaintiff did not separately identify any act done by her solely in her capacity as an officer, she cannot be held liable for breach of her duty of care. (Reply Memorandum, Doc. No. 101, at 2–3.) Second, she asserts Plaintiff cannot sustain a claim

that she violated any fiduciary duties under in *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173, 182 (Del.1986). *Id.* at 3–8. Third, she contends Plaintiff has insufficient evidence that she knowingly and deliberately disregarded her fiduciary duties under *Caremark, supra. Id.* at 8–10. Fourth, she asserts there is inadequate proof she sought to entrench herself. *Id.* at 10–11. Fifth, she notes that Plaintiff cannot establish a breach of the duty of loyalty by making false or misleading disclosures. *Id.* at 18. Last, she again notes that Plaintiff cannot recover for the unsatisfied claims of Baldwin's creditors. *Id.* at 18–20.

### Analysis

*Revlon:* For the reasons set forth in the Report and Recommendations of the Director Defendants' Motion for Summary Judgment (Doc. No. 143 at 9–10), there are no facts upon which a reasonable finder of fact could conclude that the enhanced scrutiny standard of *Revlon* should be applied to the Defendant Hendricks.

**Duty to Disclose Theory:** For the reasons set forth in the Report and Recommendations of the Director Defendants' Motion for Summary Judgment (Doc. No. 143 at 12), Plaintiff cannot rely on newly alleged misrepresentations that were not pleaded in the FAC. The statements relied upon by Plaintiff which were pled in the FAC have already been determined by Judge Rose not to be material (Entry and Order, Doc. No. 9). Plaintiff's claim to recover on the basis of asserted misrepresentations by Defendant Hendricks should be dismissed with prejudice.

**Claims of Creditors:** As noted by Defendant Hendricks, under Delaware law, creditors do not have a right of action against corporate officers or directors for claims of the creditors against the corporation. *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla,* 930 A.2d 92 (Del.2007). Plaintiff responds that the $24 million in unpaid creditors' claims which its damages expert asserts are part of the corporation's damages in this case are a claim not for the creditors, but about the extent of the company's negative net worth at the time of bankruptcy. The Court agrees with Defendant Hendricks' response: the effect of adopting that reasoning would deprive the *North American Catholic* holding of any meaning. Plaintiff cannot recover the $24 million as general damages.

■ **Breach of Duties of Care and Loyalty:** Although Plaintiff has not carefully distinguished in its Combined Memorandum between alleged breaches of the duty of care by Defendant Hendricks and alleged breaches of the duty of loyalty, it has presented sufficient evidence from which a reasonable fact finder could conclude that she breached each of those duties and is therefore liable to the company. Even apart from the expert report of Bart Brown, for which there is an inadequate foundation under Fed.R.Civ.P. 56(e), there is evidence of record which requires a trial. No exhaustive examination of that evidence will be made here, because a trial judge deciding a motion for summary judgment should not be determining credibility or weighing the evidence. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), citing *Adickes [v. S.H. Kress & Co.],* 398 U.S. [144] at 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 [ (1970) ]; *see also Russo v. City of Cincinnati,* 953 F.2d 1036, 1041–42 (6th Cir.1992). With respect to the duty of care, it is sufficient to note that shareholders, former executives, dealers, and members of the board questioned seriously the management of the company during the time Defendant Hendricks was president, not just after her strategic plan failed.

The evidence Plaintiff has assembled suggesting breach of the duty of loyalty is stronger yet. While Defendant Hendricks testifies to reason for various of her actions which are consistent with a proper corporate purpose, her actions are also amenable of a different interpretation. Her lapses of memory about the relationship with Mr. Siegal of the Arnold and Porter firm, along with his similar lapses, call the credibility of each of them into question. While she suggests good reasons for blocking the Marks–Kimble management buyout proposal, it is admitted that she knew she would not be CEO under their plan and that fact is consistent with a motive on her part to block the plan in her own interest, as opposed to the interests of Baldwin shareholders. Summary judgment is particularly inappropriate where liability may turn on the motives of an actor for certain conduct and the conduct is not so self-evidently disinterested as to preclude finding a disloyal motive. See 10B Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2730. Because Defendant Hendricks' motives are strongly at issue in this case, her testimony that she was motivated only by the good of the company must be tested at trial.

### Conclusion

In accordance with the foregoing analysis, the Motion for Summary Judgment of Defendant Karen Hendricks should be granted as to the *Revlon* claim, granted as to the misrepresentation claim(s), granted as to the attempt of Plaintiff to recover damages for the corporation measured by the unpaid claims of creditors as of the date of bankruptcy, and otherwise denied.